UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KATHERINE BRYANT, by and through her
parents and natural guardians, APRIL BRYANT and
WAYNE BRYANT, and APRIL BRYANT,
Individually, and WAYNE BRYANT, Individually,

                                  Plaintiffs,

    -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                                 Defendants.

-------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ APR 2 9 2009 ★

Civil Action No.:

**BROOKLYN OFFICE**

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

**09 1751**

FEUERSTEIN, J.

TOMLINSON, M.J

    Plaintiffs, **KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, and APRIL BRYANT, Individually and WAYNE BRYANT, Individually,** by their attorneys, **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.,** as and for their Complaint against the Defendants allege, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

    1.    This case arises out of medical care and treatment received by the infant Plaintiff, **KATHERINE BRYANT,** at **THE CHIARI INSTITUTE, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. and the HARVEY CUSHING INSTITUTES OF NEUROSCIENCE from Defendants THOMAS H. MILHORAT, M.D.,  PAOLO A. BOLOGNESE M.D., and MISAO NISHIKAWA, M.D.** between March and October, 2008.

2.     The Defendants falsely advised the Plaintiff, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, that she was suffering from occult tethered cord syndrome and Elher's Danlos syndrome.

3.     The Defendants thereafter recommended and performed surgery upon the infant Plaintiff, KATHERINE BRYANT, without advising APRIL BRYANT and WAYNE BRYANT that said surgery was unnecessary and experimental and that KATHERINE BRYANT was being used as a human research subject.  Specifically, on April 15, 2008, Defendants, THOMAS H. MILHORAT, M.D. and PAOLO A. BOLOGNESE, M.D., performed spinal cord untethering surgery upon the Plaintiff, KATHERINE BRYANT, on the premises of Defendant NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.  The safety and efficacy of said "untethering" surgery as it relates to a patient allegedly suffering from occult tethered cord syndrome has never been proven by any published peer-reviewed medical or scientific study. Defendants recommended and performed this surgery solely for their financial gain.  Defendants utilized the Plaintiff, KATHERINE BRYANT, as a human research subject without her parents' knowledge and consent, solely for financial gain.  The tethered cord surgery in no way benefited the Plaintiff, KATHERINE BRYANT. To the contrary, the infant Plaintiff has been caused to suffer severe and irreversible damages that will impact the rest of her life.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the Plaintiffs and the Defendants and since this action seeks damages in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

5.     Venue is proper in this district pursuant to 28 U.S.C. 1391(a).

2

## THE PARTIES

6. At all times herein after mentioned, Plaintiff, **KATHERINE BRYANT**, resided at 2417 E. St. James, Hayden Lake, County of Kootenai, State of Idaho.

7. At all times herein after mentioned, Plaintiff, **APRIL BRYANT**, resided at 2417 E. St. James, Hayden Lake, County of Kootenai, State of Idaho.

8. At all times herein after mentioned, Plaintiff, **WAYNE BRYANT**, resided at 2417 E. St. James, Hayden Lake, County of Kootenai, State of Idaho.

9. At all times hereinafter mentioned, Plaintiffs, APRIL BRYANT and WAYNE BRYANT are the parents and natural guardians of KATHERINE BRYANT, an infant under the age of 18.

10. At all times hereinafter mentioned, THOMAS H. MILHORAT, M.D. (hereinafter referred to as **"MILHORAT"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

11. At all times hereinafter mentioned, Defendant, MILHORAT, held himself out to the public as a specialist in the area of neurosurgery.

12. At all times hereinafter mentioned, PAOLO A. BOLOGNESE, M.D. (hereinafter referred to as **"BOLOGNESE"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

13. At all times hereinafter mentioned, Defendant, BOLOGNESE, held himself out to the public as a specialist in the area of neurosurgery.

3

14. At all times hereinafter mentioned, MISAO NISHIKAWA, M.D., (hereinafter referred to as "**NISHIKAWA**"), was and is an unlicensed physician, practicing medicine without a license in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

15. At all times hereinafter mentioned, Defendant, NISHIKAWA, held himself out to the public as a specialist in the area of pathophysiology.

16. At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE held Defendant, NISHIKAWA out as a physician licensed to practice medicine in the State of New York and the world's leading expert on morphometrics.

17. At all times hereinafter mentioned, Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. (hereinafter referred to as "**NORTH SHORE - LIJ**"), was and is a corporation duly organized and existing under the laws of the State of New York.

18. At all times hereinafter mentioned, Defendant, NORTH SHORE - LIJ, by its agents, servants and employees, controlled, managed and operated the hospital located at 300 Community Drive, Manhasset, New York 11030, in the State of New York, County of Nassau, for the care and treatment of persons afflicted with illness and disease.

19. At all times hereinafter mentioned, THE CHIARI INSTITUTE (hereinafter referred to as "**TCI**"), was and is a corporation or other professional association, duly organized and existing under the laws of the State of New York, located at 865 Northern Boulevard, Great Neck, New York 11021.

20.     At all times hereinafter mentioned, the Defendant, TCI, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

21.     At all times hereinafter mentioned, the Defendant, TCI, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

22.     At all  times hereinafter mentioned, HARVEY CUSHING INSTITUTES FOR NEUROSCIENCE (hereinafter referred to as "**HARVEY CUSHING**"), was and is a corporation or other professional association, duly organized and existing under the laws of the State of New York, located at 865 Northern Boulevard, Great Neck, New York 11021.

23.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

24.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

25.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, TCI.

26.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, HARVEY CUSHING.

27.     At all times herein mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

28.     At all times hereinafter mentioned, Defendant, MILHORAT, was a private attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

29.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Chief of Neurosurgery at Defendant, NORTH SHORE – LIJ.

30.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, TCI.

31.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

32.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

33.     At all times herein mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

34.     At all times herein mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

35.     At all times herein mentioned, Defendant, BOLOGNESE, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

36.     At all times hereinafter mentioned, Defendant BOLOGENSE was not, and is not board certified in neurosurgery, or in any area of medicine.

37.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, TCI.

38.     At all times herein mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

39. At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

40. At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

41. At all times herein mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

42. At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, TCI.

43. At all times hereinafter mentioned, Defendant, NISHIKAWA, was not a resident at Defendant, NORTH SHORE – LIJ.

44. At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

## FACTUAL SUMMARY

45. Plaintiff, **KATHERINE BRYANT,** was born on December 30, 2003.

46. In or about January, 2008, when the Plaintiff, KATHERINE BRYANT, was five (5) years old, she developed severe headaches, visual disturbances and vomiting and was diagnosed with Chiari I Malformation.

47. Chiari malformation is a condition in which brain tissue protrudes into the spinal canal. There are several different forms of Chiari Malformation. The most common type is the Chiari I malformation. In normal anatomy, the cerebellar tonsils are located just above the level

7

of the foramen magnum. In an individual with Chiari I, the tonsils hang below the level of the foramen magnum into the spinal canal.

48.     The Plaintiff's parents, APRIL BRYANT and WAYNE BRYANT, learned of Defendant, TCI and the Defendant physicians named herein from the websites of various support groups for individuals suffering from Chiari Malformation.

49.     The Plaintiff's parents, APRIL BRYANT and WAYNE BRYANT, reviewed the website of the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., and took their child to said facility for an evaluation as a result of the contents of said website.

50.     The website of TCI advertises to the public that the physicians at said facility have expertise in the treatment of Chiari Malformations, and other related conditions.

51.     The website of TCI falsely advertises to the public that "the neurosurgeons of The Chiari Institute have made major contributions to the basic sciences of Chiari Malformation (CM) and syringomyelia".

52.     The website of TCI falsely advertises to the public that it carries out "research projects" supported by a $17.5 million dollar grant from the National Institutes of Health.

53.     The NIH grant advertised on TCI's website does not exist.

54.     The website of the Defendant, TCI, posts a video presentation by Defendant BOLOGNESE entitled "Tethered Cord Syndrome."

55.     The video presentation by Defendant BOLOGNESE contains knowingly false and misleading information regarding occult tethered cord syndrome.

56.     Defendant BOLOGNESE states on said video presentation that when the filum terminale becomes too thick and too tense it creates a downward pull on the spinal cord, without

8

informing the public that there are no scientific studies or peer reviewed medical literature, supporting this conclusion.

57.    Defendant BOLOGNESE states on said video that when the filum terminale becomes too thick and too tense it creates a downward displacement of the spinal column without informing the public that there are no scientific studies or medical literature supporting this conclusion.

58.    Defendant BOLOGNESE claims in the video presentation that Defendant TCI has developed the "TCI Special," a system for diagnosing occult tethered cord syndrome by utilizing clinical data, radiologic studies, stimulation tests and morphometrics.

59.    Defendant BOLOGNESE fails to inform the public that the concept of morphometrics as it relates to occult tethered cord syndrome is a diagnostic tool developed by Defendant NISHIKAWA, an employee of Defendant TCI, who is not licensed to practice medicine in the State of New York.

60.    Defendant BOLOGNESE on said video presentation fails to inform the public that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to occult tethered cord syndrome.

61.    Defendant BOLOGNESE on said video presentation fails to advise the public that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of occult tethered cord.

62.    Defendant BOLOGNESE fails to inform the public on said video presentation that he and Defendant MILHORAT rely on Defendant NISHIKAWA'S interpretations of radiological studies in making the diagnosis of occult tethered cord, even though he is not a physician licensed to practice medicine in the State of New York.

9

63.     The Plaintiff, KATHERINE BRYANT, was evaluated at Defendant TCI, by the Defendants who advised the her parents, APRIL BRYANT and WAYNE BRYANT, that she was suffering from Occult Tethered Cord Syndrome, a condition where the spinal cord is improperly attached, or tethered to the spine.

64.     The family was further advised that the Plaintiff, KATHERINE BRYANT suffered from Elher's Danlos syndrome, a genetic disorder affecting collagen synthesis, and that the Tethered Cord Syndrome was the "sum effect" of the Chiari I Malformation and the Elher's Danlos Syndrome.

65.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the parents of Plaintiff, KATHERINE BRYANT, misled the family into believing that by having surgery to correct the occult tethered cord, KATHERINE BRYANT'S, Chiari I Malformation would improve.

66.     The Defendants misled the Plaintiffs into believing that the occult tethered cord surgery would cause the cerebellar tonsils to retract at least 3.5 mm above the level of the foramen magnum.

67.     That Defendant BOLOGNESE promised APRIL BRYANT and WAYNE BRYANT that KATHERINE BRYANT's cerebellar tonsils would retract by at least 3.5 mm.

68.     The Defendants falsely misrepresented to APRIL BRYANT and WAYNE BRYANT that by not having the tethered cord surgery, the tethered cord would start to pull more and more, causing a worsening of the tonsillar herniation.

69.     The Defendants falsely misrepresented to APRIL BRYANT and WAYNE BRYANT that if KATHERINE BRYANT had tethered cord surgery she would not need Chiari decompression surgery in the future.

70.     That Defendants falsely misrepresented to APRIL BRYANT and WAYNE BRYANT that tethered cord surgery was a very safe procedure.

71.     The Defendants failed to advise APRIL BRYANT and WAYNE BRYANT that occult tethered cord is a highly controversial subject in the field of neurosurgery.

72.     The Defendants knowingly misled the Plaintiffs into believing that the occult tethered cord surgery would lead to an improvement of the Plaintiff, KATHERINE BRYANT'S Chiari symptoms which included headaches, visual disturbances and vomiting.

73.     The Defendants knowingly misled the Plaintiffs into believing that there is an association between occult tethered cord syndrome and Chiari I malformation and that by operating upon the Tethered Cord, the Chiari I malformation would be corrected as well.

74.     That at a lecture given by Defendant BOLOGNESE at a meeting of the American Association of Syringomyelia held in July 2008 in Arlington, Virginia, a video copy of which is available on the internet, Defendant, BOLOGNESE, described the phenomenon of tethered cord syndrome and discussed the benefits of having surgery to correct same.   Defendant BOLOGNESE in said video falsely claims that following tethered cord surgery there is retraction of the cerebellar tonsils by at least 3.8 mm, and, that downward displacement of the brainstem reduced by an average of 3.5 mm, resulting in resolution of Chiari symptoms.

75.     The Defendants misled the Plaintiffs into believing that surgery to correct the tethered cord is safe and rarely leads to complications.

11

76.     The Defendants did not advise the Plaintiffs that surgery on occult tethered cords has not been widely studied in the scientific and medical community, and that no causal connection between tethered cord and Chiari I malformation has been proven.

77.     The Defendants did not advise the Plaintiffs that there were no published peer reviewed medical studies in existence establishing that performing surgery on an occult tethered cord provides benefit for the patient undergoing such surgery.

78.     That Defendants failed to advise the Plaintiffs that articles written by physicians associated with Defendant, TCI, on the topic of occult tethered cord and Chiari I Malformation had been submitted for publication, but had been rejected by peer reviewed medical journals.

79.     The Plaintiff, KATHERINE BRYANT, underwent surgery to allegedly fix her tethered cord on April 15, 2008 at NORTH SHORE – LIJ, which was performed by Defendants MILHORAT and BOLOGNESE.

80.     Defendant MILHORAT acted as the primary surgeon and was assisted during the procedure by Defendant BOLOGNESE.

81.     Post-operatively, APRIL BRYANT and WAYNE BRYANT were falsely advised by Defendants, BOLOGNESE and MILHORAT, that KATHERINE BRYANT'S tonsillar herniation had already improved by 3.5 mm as a result of the surgery and that she had the most successful tethered cord surgery as of yet.

82.     Defendants MILHORAT and BOLOGNESE charged in excess of SIXTY THOUSAND ($60,000.00) DOLLARS to perform the tethered cord surgery.

83.     The Plaintiff's, KATHERINE BRYANT, condition worsened following the performance of the tethered cord surgery.

84.     The Plaintiff, KATHERINE BRYANT, developed significant injuries following the performance of the tethered cord surgery, including but not limited to a condition known as syringomyelia and many other complications and injuries.

85.     The Plaintiff, KATHERINE BRYANT, had undergone several neurosurgeries following the occult tethered cord surgery performed by Defendants MILHORAT and BOLOGNESE, and continues to suffer from permanent injuries resulting from the surgery to correct the tethered cord syndrome which she never had.

86.     The Defendants induced the Plaintiff, KATHERINE BRYANT, by and through her parents and natural guardians to have experimental tethered cord surgery, solely for their financial gain, full well knowing that there is no scientific or medical proof that surgery for occult tethered cord syndrome provides any real improvement of the patients' symptomatology.

87.     The Defendant, BOLOGNESE, presented a lecture at the meeting of the Association of Syringomylia held in July, 2008, in Arlington, Virginia, which is available on the internet wherein he stated that a prospective study in tethered cord surgery was being performed at Defendant, TCI.

88.     The Defendants, performed experimental surgery upon the Plaintiff, without advising the Plaintiff or her parents, that the surgery was experimental in nature, or that her case would be studied and included in a nationwide study that was being performed on a condition known as Elher's Danlos Syndrome, which the Defendants claimed was  connected to Tethered Cord Syndrome.

89.     Upon information and belief, pathologic studies were performed upon specimens removed from the Plaintiff's body during the unnecessary and not indicated Tethered Cord

Surgery, solely for purposes of gathering information for the various studies without her parents' consent.

90.     The Defendants neither advised the Plaintiffs about the experimental nature of the surgery, nor did the Defendants ask the Plaintiffs to sign a consent form of the type that would be required when human experimentation is taking place.

91.     The Plaintiff, KATHERINE BRYANT now suffers from significant injuries arising from the performance of the unnecessary and medically useless surgery performed on April 15, 2008 by Defendants MILHORAT and BOLOGNESE at Defendant NORTH SHORE - LIJ; some of these injuries include but are not limited to: syrinx from C2 on the cervical spine to the conus, which was not present prior to the tethered cord surgery, worsening Chiari herniation, cavitation of the spinal cord, brainstem compression.

## AS AND FOR A FIRST CAUSE OF ACTION (MEDICAL MALRPACTICE)

92.     That Plaintiff, **KATHERINE BRYANT**, came under the care of the Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, TCI, HARVEY CUSHING and NORTH SHORE - LIJ**, in or about March, 2008.

93.     That the Defendants, MILHORAT, BOLOGNESE, NORTH SHORE – LIJ, TCI and HARVEY CUSHING, performed surgery upon KATHERINE BRYANT on April 15, 2008.

94.     That the Plaintiff, KATHERINE BRYANT, continued to receive care from each of these Defendants until approximately October, 2008.

95.     At all times herein mentioned, the Defendants had a duty to use reasonable and proper care in their efforts to care for, treat and medicate said Plaintiff.

14

96.     That the Defendant, NORTH SHORE – LIJ, in rendering services to the Plaintiff, owed her the duty to use the degree of care, skill and diligence used by hospitals generally in the community.

97.     That the Defendants, jointly and severally, acting by themselves and through their agents, failed to use due, reasonable and proper care in treating the Plaintiff and deviated from accepted standards of medical care prevailing in the area of neurology and neurosurgery, and the Defendants failed to exercise the knowledge, skill and diligence, which as physicians they should have possessed and exercised on behalf of the Plaintiff, and were otherwise careless and negligent.

98.     That as a result of the foregoing, the Plaintiff, KATHERINE BRYANT, has sustained serious, severe and irreversible personal injuries, and pain and suffering.

99.     That solely as a result of the aforesaid injuries due to the improper care and treatment on the part of the Defendants, the Plaintiff, KATHERINE BRYANT, has been subjected to repeated medical therapy, examinations, tests, medications, hospitalizations, and other care, and the Plaintiff, KATHERINE BRYANT, will continue to require such further treatment in the future.

100.    That the Plaintiff, KATHERINE BRYANT, has sustained the injuries and damages set forth solely by reason of the carelessness, negligence and lack of skill of the Defendants, without any negligence or carelessness on the part of Plaintiff, KATHERINE BRYANT.

101.    That the Plaintiff, KATHERINE BRYANT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

### (LACK OF INFORMED CONSENT)

102.    Plaintiffs, **KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT,** repeat and reallege each and every allegation contained in Paragraphs numbered **"1"** through **"101"**, inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

103.    The Defendants were under a duty and obligation to advise and inform the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, of inherent dangers, risks, and consequences of the medical treatment and procedures recommended by the Defendants, and that the Defendants failed, neglected, and/or refused to advise, inform, notify the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, of the apparent risk and possible complications and dangers which might result in the aforesaid procedures and/or treatment recommended.

104.    Defendants failed, neglected, and/or refused to inform, advise, notify, and counsel the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, of the possible inherent dangers and risks of said procedures and treatment recommended and performed, and failed to advise and inform the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, of any other method of treatment which might have been used to alleviate the condition from which the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, were suffering.

105.    Said failure to advise, inform, notify, and counsel the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, did not afford them adequate knowledge and information so as to determine whether or not they should submit to the aforesaid treatment and, therefore, the Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, did not give their informed consent, based upon adequate knowledge of the risks and dangers of the procedures; but rather, consented based upon information which was inadequate and insufficient upon which to base a decision to submit to the said procedure.

106.    By reason of the aforesaid, the treatment given herein was not based upon adequate and sufficient knowledge or informed consent.

107.    Plaintiffs, KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, have sustained the injuries and damages, as set forth, solely by reason of the carelessness, negligence, and unskillfulness of the Defendants, and each of them, without negligence or carelessness on their parts contributing thereto.

108.    That the Plaintiff, KATHERINE BRYANT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION

### (FRAUD)

109.    The Plaintiff, **KATHERINE BRYANT** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"108"**, inclusive, of this Verified Compliant, with the same force and effects as if set forth herein at length.

110. That on or about April 15, 2008, KATHERINE BRYANT had surgery at NORTH SHORE – LIJ, performed by Defendants, MILHORAT and BOLOGNESE.

111. That KATHERINE BRYANT, by and through her parents, APRIL BRYANT and WAYNE BRYANT, was fraudulently induced into having surgery by Defendants, MILHORAT, BOLOGNESE, NISHIKAWA, TCI, HARVEY CUSHING and NORTH SHORE – LIJ.

112. That the Defendants falsely advised the Plaintiff that she had Elher's Danlos Syndrome which they claim is connected to occult tethered cord syndrome, and that said Defendants knew these statements were false when made.

113. That the Defendants falsely advised the Plaintiff that she was suffering from tethered cord syndrome, and that said Defendants knew these statements were false when made.

114. That the Defendants falsely advised the Plaintiff that she needed tethered cord surgery, and that said Defendants knew these statements were false when made.

115. That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, there would be at least a 3.5 millimeter retraction of the cerebral tonsils, and that said Defendants knew these statements were false when made.

116. That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, she would see an improvement in her Chiari I malformation, and that said Defendants knew these statements were false when made.

117. That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, she would see an improvement in her Chiari I symptoms, and that said Defendants knew these statements were false when made.

118. That these representations were falsely made, and in truth the Plaintiff neither suffered from tethered cord syndrome nor Ehler's Danlos syndrome and, in fact, there was no

published medical or scientific proof that Chiari symptoms or Chiari I malformation can be improved through the performance of tethered cord surgery.

119.    That in fact, the Defendants failed to inform the Plaintiff and her parents that tethered cord surgery can adversely affect the patient.

120.    That the Defendants fraudulently advised the Plaintiffs on their website that Defendants, TCI and HARVEY CUSHING are supported by a $17.5 million dollar grant from the NIH which in fact, does not exist.

121.    That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website, knowingly and with intent to deceive, advised the public that the Decedents had developed the "TCI Special," a diagnostic system enabling them to diagnose occult tethered cord through the evaluation of clinical, radiological and stimulation data, and morphometrics.

122.    That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website, knowingly and with intent to deceive failed to advise the public that the use of morphometrics in the diagnosis of occult tethered cord, is a concept developed by Defendant NISHIKAWA, an employee by Defendant TCI who is an unlicensed physician in the State of New York.

123.    That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website, knowingly and with intent to deceive failed to advise the public that morphometrics has not been accepted as a standard diagnostic tool for occult tethered cord syndrome.

124.    That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website knowingly and with intent to deceive failed to

advise the public that there are no scientific studies or peer reviewed medical literature in existence demonstrating that morphometrics is useful and efficacious in the diagnosis of occult tethered cord syndrome.

125. That Defendant BOLOGNESE knowingly and with intent to deceive failed to advise the public in the video presentation on Tethered Cord Syndrome posted on Defendant TCI's website, that he and Defendant MILHORAT rely upon Defendant NISHIKAWA'S interpretation of various radiological studies, and his morphometric calculations, in making the diagnosis of occult tethered cord syndrome, even though Defendant NISHIKAWA was not, and is not, a licensed a medical doctor in the State of New York.

126. That the Defendants jointly and severally recommended said surgery solely for their own financial gain, knowing full well that there was no scientific proof that this surgery would be of any benefit to the Plaintiff.

127. That as a result of the knowingly false representations made by the Defendants, the Plaintiff, KATHERINE BRYANT, by and through her parents and natural guardians, was fraudulently induced into having tethered cord surgery on April 15, 2008.

128. That the Plaintiff, KATHERINE BRYANT, by and through her parents and natural guardians, detrimentally relied on the fraudulent information provided by the Defendants as set forth in the paragraphs above, and agreed to have tethered cord surgery, which was performed by the Defendants on April 15, 2008.

129. As a result of having surgery by the Defendants, the Plaintiff was caused to suffer serious physical, emotional and financial injuries.

130. As a result of the fraud perpetrated by the Defendants upon the Plaintiff, KATHERINE BRYANT, she is entitled to punitive damages.

131.    Accordingly, the Plaintiff, KATHERINE BRYANT has suffered compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

**AS AND FOR A FOURTH CAUSE OF ACTION (INTENTIONAL BATTERY)**

132.    The Plaintiff, **KATHERINE BRYANT**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"131"**, inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

133.    That the Defendants, MILHORAT, BOLOGNESE, TCI, HARVEY CUSHING and NORTH SHORE – LIJ, performed surgery upon the Plaintiff, KATHERNE BRYANT, on April 1, 2008 and in so doing, unlawfully touched her person.

134.    That the Defendants, MILHORAT, BOLOGENSE, TCI, HARVEY CUSHING and NORTH SHORE – LIJ performed human experimentation upon the Plaintiff, KATHERINE BRYANT, on APRIL 15, 2008, without her lawful consent.

135.    That the Defendants, MILHORAT, BOLOGNESE, TCI, HARVEY CUSHING and NORTH SHORE – LIJ, in unlawfully touching the Plaintiff, did so maliciously and with the desire to cause injury to the Plaintiff.

136.    That the Defendants, MILHORAT and BOLOGNESE, at the time when they unlawfully touched the Plaintiff, KATHERINE BYRANT, were doing so in the scope of their employment.

137.    That as a result of the battery committed by the Defendants, the Plaintiff, KATHERINE BRYANT, was caused to suffer physical, emotional, financial and economic injuries.

138.    That as a result of the battery committed upon the Plaintiff, KATHERINE BRYANT, she is entitled to recover punitive damages.

21

139.     That the Plaintiff, KATHERINE BRYANT, is entitled to recover for punitive and compensatory damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION

(VIOLATION OF NYS GBL SECTIONS 349 and 350)

140.     The Plaintiff, **KATHERINE BRYANT**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"139"**, inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

141.     That the making and dissemination of the representations by the Defendants to Plaintiff, KATHERINE BRYANT, and her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, as well as other consumers throughout the United States, as outlined in Paragraphs 45-91 constitute deceptive business practices and acts and false advertising in violation of New York State General Business Law Sections 349 and 350.

142.     Through their aforementioned conduct, Defendants MILHORAT, BOLOGNESE, NISHIKAWA, NORTH SHORE - LIJ, TCI and HARVEY CUSHING, aided and abetted one another and violated N.Y.S. General Business Law Sections 349 and 350.

143.     The Defendants were unjustly enriched as a result of the aforementioned deceptive business practices and acts and false advertising.

144.     The Plaintiff, KATHERINE BRYANT, was injured and sustained injuries as a result of the Defendants false business practices and false advertising, in that she was induced into having surgery, that not only failed to improve her symptoms, but made her medical condition worse, to the extent that she will suffer from spinal injuries that she sustained during the surgery of April 15, 2008 for the rest of her life.

145.     The Plaintiff, KATHERINE BRYANT seeks to recover compensatory damages for the injuries she sustained a result of the Defendants' deceptive business practices, and false advertising.

146.     The Plaintiff, KATHERINE BRYANT seeks to recover punitive damages and reasonable attorney's fees and costs as a result of the Defendants' deceptive business practices, acts and false advertising pursuant to the New York State G.B.L. Section 349 and 350.

147.     That due to the Defendants deceptive business practices, the Plaintiff, KATHERINE BRYANT, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (PARENTAL LOSS OF CONSORTIUM)

148.     The Plaintiffs, **APRIL BRYANT and WAYNE BRYANT,** repeat and reallege each and every allegation contained in Paragraphs numbered **"1"** through **"147"** inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

149.     That the Plaintiffs, APRIL BRYANT and WAYNE BRYANT, at all times hereinafter mentioned, were, and are, the parents of the Infant Plaintiff, KATHERINE BRYANT.

150.     That as a result of the aforementioned injuries sustained by the Infant Plaintiff, KATHERINE BRYANT, the Plaintiffs, APRIL BRYANT and WAYNE BRYANT, have been, and will continue to be forced to expend substantial amounts of money for the purpose of obtaining medical care and/or attention for their infant daughter and further have been caused to lose the comfort, society, companionship, and consortium of their daughter.

151. As a direct and proximate result of the aforementioned injuries, the Plaintiffs, APRIL BRYANT and WAYNE BRYANT, have been monetarily damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE**, the Plaintiffs **KATHERINE BRYANT, by and through her parents and natural guardians, APRIL BRYANT and WAYNE BRYANT, and APRIL BRYANT, Individually and WAYNE BRYANT, Individually**, demand judgment against the Defendants

(a) on the FIRST CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(b) on the SECOND CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(c) on the THIRD CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(d) on the FOURTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(e) on the FIFTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS; and

(f) on the SIXTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

together with costs, interest and disbursements of this action, and for such other and further relief that this Court deems just and proper.

Dated: New York, New York
      April 28th, 2009

                            **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                            Attorneys for Plaintiffs

By:

                      LEE S. GOLDSMITH (LSG 8875)
                      CHRISTINA CTORIDES (CC 5271)
                      A Member of the Firm
                      Office & P.O. Address
                      747 Third Avenue, 37th Floor
                      New York, NY  10017
                      (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATHERINE BRYANT, by and through her
parents and natural guardians, APRIL BRYANT and
WAYNE BRYANT, and APRIL BRYANT,
Individually, and WAYNE BRYANT, Individually,

                             Plaintiffs,

      -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                        Defendants.
-----------------------------------------------------------------X

Civil Action No.:

**JURY DEMAND**

## JURY DEMAND

**PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury on all the issues herein.

Dated: New York, New York
      April 28th, 2009

                    **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                    Attorneys for Plaintiffs

        By:                       

                    LEE S. GOLDSMITH (LSG 8875)
                    CHRISTINA CTORIDES (CC 5271)
                    A Member of the Firm
                    Office & P.O. Address
                    747 Third Avenue, 37th Floor
                    New York, NY  10017
                    (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KATHERINE BRYANT, by and through her
parents and natural guardians, APRIL BRYANT and
WAYNE BRYANT, and APRIL BRYANT,
Individually, and WAYNE BRYANT, Individually,

Civil Action No.:

                    Plaintiffs,

**CERTIFICATE
OF MERIT**

     -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                   Defendants.
------------------------------------------------------------X

STATE OF NEW YORK  )
                 : ss.:
COUNTY OF NEW YORK)

     **LEE S. GOLDSMITH**, a member of the law firm of **GOLDSMITH, CTORIDES &**

**RODRIGUEZ, L.L.P.,** hereby affirms the truth of the following:

     That pursuant to the Rules of Civil Procedure §3012(a), the deponent states that he has

conferred with a physician who is a specialist in the field in which the Defendants practice

medicine and has been advised that sufficient basis exist for the commencement of this medical

malpractice suit.

                                    **LEE S. GOLDSMITH**

Sworn to before me this
28th day of April, 2009

Notary Public

KATHLEEN KATAN
Notary Public, State of New York
No. 01KA4735756
Qualified in Orange County
Commission Expires April 30, 20 11

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

**LEE S. GOLDSMITH**, being duly sworn, deposes and says:

I am a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.**, attorneys for the Plaintiffs in the within action. That I have read the foregoing Complaint and know the contents thereof; that the same is true, to my knowledge, except as to the within matters stated to be alleged upon information and belief, and that, as to those, I believe them to be true. That the sources of my information are papers and records in Deponent's possession and file. That the reason this Verification is made by your Deponent, and not by said Plaintiffs, are that the Plaintiffs do not reside within the County wherein your Deponent maintains his office.

**LEE S. GOLDSMITH**

Sworn to before me this
28th day of April, 2009.

Notary Public

KATHLEEN KATAN
Notary Public, State of New York
No. 01KA4735756
Qualified in Orange County
Commission Expires April 30, 20 11

CIVIL ACTION NO.:
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATHERINE BRYANT, by and through her parents and natural guardians,
APRIL BRYANT and WAYNE BRYANT, and APRIL BRYANT, Individually,
and WAYNE BRYANT, Individually,

Plaintiffs,

- against -

THOMAS H. MILHORA, M.D., PAOLO A. BOLOGNESE, M.D., MISAO
NISHIKAWA, M.D., NORTH SHORE – LONG ISLAND JEWISH HEALTH
SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

Defendants.

---

# CIVIL COVER SHEET,
# SUMMONS IN A CIVIL ACTION and
# COMPLAINT AND DEMAND FOR JURY TRIAL

Yours, etc.

**GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.**
Attorneys for Plaintiffs
**KATHERINE BRYANT, by and through her parents,**
**and APRIL and WAYNE BRYANT, Individually**
747 Third Avenue, 37th Floor
New York, New York 10017
(212) 421-5500

To

Service of a copy of the within is hereby admitted.

Dated:...................................  ..........

Attorney(s) for     .................................................................