UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

K.B., by and through her parents and natural
guardians, APRIL BRYANT and WAYNE
BRYANT, and APRIL BRYANT, Individually, and
WAYNE BRYANT, Individually,

                Plaintiffs,

              -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., NORTH SHORE - LONG
ISLAND JEWISH HEALTH SYSTEM, INC., THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital, and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                Defendants.
-------------------------------------------------------------------X

Index No. CV-09-1751

**PETITION TO SETTLE
INFANT'S CLAIM**

**TO THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

STATE OF IDAHO      )
                    : ss.:
COUNTY OF KOOTENAI  )

      The Petition of APRIL BRYANT and WAYNE BRYANT, for leave to settle the claim of

K.B., an infant, respectfully shows and alleges, as follows:

      1.      That the Petitioners reside at 2417 E. St. James, Hayden Lake, ID 83835.

      2.      That the Petitioners are the parents and natural guardians of K.B., an infant under

the age of 18 years old, having been born on ██████████████.

      3.      That said infant currently resides at 2417 E. St. James, Hayden Lake, ID 83835

and has at all times resided with the Petitioners.

4.      That said infant is currently ▓▓▓▓▓▓▓▓▓. K.B. is currently homeschooled as she is unable to sit at a desk for an extended period of time due to her lower back and leg pain.

5.      The instant action arose from events that transpired at the NORTH SHORE-LIJ HEALTH SYSTEM, INC., in Manhasset, New York.

6.      This is a medical malpractice action wherein it has been claimed that NORTH SHORE-HEALTH SYSTEM, by and through its agents, servants and employees, performed unnecessary tethered cord surgery upon the infant, K.B., on April 15, 2008.

7.      That on or about the 3rd day of November, 2008, the Petitioners consulted with and retained the law offices of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P, having offices located at 750 Third Avenue, 9th Floor, New York, New York 10017, pursuant to a Retainer Agreement, which is annexed hereto as **Exhibit "A"**.

8.      On August 4, 2009, the law firm of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. filed a Retainer Statement and was given Retainer Statement Number 3587774.  (See **Exhibit "B"**)

9.      The firm of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. worked on this case with LOCKS LAW FIRM, PLLC , and your Petitioners were advised that GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC  would be working together on K.B.'s behalf and sharing in the fee. (See **Exhibit "C"**)

10.     The firms of GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC obtained the medical records and had the matter reviewed by medical experts, including, but not limited to, a pediatric neurosurgeon and a pediatric neurologist who provided the basis to proceed with the action.

11.     A Complaint was filed in the United States District Court, Eastern District of New York on the 29th day of April, 2009. A copy of the Complaint is annexed hereto as **Exhibit "D"**. [Docket No. 1]

12.     The infant Plaintiff, K.B., was born with a condition known as Chiari I Malformation. This is a congenital brain disorder wherein the cerebellar tonsils descend out of the skull onto the spinal cord, impeding the cerebral spinal flow, and causing compression and neurologic symptoms. The most common symptoms caused by Chiari Malformation are headaches, dizziness, numbness and tingling of the extremities, and neck pain.

13.     As an infant, K.B. was a poor feeder and had gastric reflux which was treated with Zantac. She also had moderate speech delay for which she received speech therapy. Overall, she was a very happy, normal and inquisitive toddler. In January, 2008, K.B.'s life forever changed. She had been ill for about two weeks with a fever and headache, and was being treated with antibiotics for sinusitis. After jumping about in a bounce house, K.B. complained of a bad headache. Later that same day, she said that she could not see the TV screen in the car for a few seconds. The next day, while in her room, she said that the walls were blue and the ceiling was purple, although they were yellow and white respectively. Your Petitioners became quite concerned and took K.B. to the emergency room at Kootenai Medical Center in Coeur d'Alene, Idaho.

14.     The infant Plaintiff, K.B., was diagnosed with Chiari I Malformation in January, 2008 when she had a brain MRI at Kootenai Medical Center in Coeur d'Alene, Idaho which revealed a 15 mm tonsillar herniation.

15. In the days which followed the initial brain MRI, K.B. had cervical, thoracic and lumbar MRIs which were essentially normal, but for the finding of the Chiari I Malformation. There was neither evidence of a syrinx nor evidence of tethered cord syndrome.

16. The infant Plaintiff, K.B., was first seen by the Defendants at North Shore University Hospital's Chiari Institute on March 24, 2008. Her chief presenting complaints on that date were:

        A.     Headache;

        B.     Temporary loss of vision and color change; and

        C.     Vomiting.

        (See Defendant's initial note annexed as **Exhibit "E"**)

17. Defendant, PAOLO A. BOLOGNESE, M.D., recommended that infant Plaintiff, K.B., have tethered cord surgery, a surgery on the lumbar spine. The Defendants claimed that the tethered cord surgery would allegedly improve the Chiari I Malformation in that the cerebellar tonsils would ascend upwards.

18. The lawsuit arose because the Defendants performed unnecessary tethered cord surgery upon the infant Plaintiff on April 15, 2008. As the infant Plaintiff did not have tethered cord syndrome, the tethered cord surgery, which the Defendants performed in the region of lumbar spine at L4/L5, was not indicated. A copy of the operative report is annexed hereto as **Exhibit "F"**.

19. Upon returning home from the tethered cord surgery, K.B. developed fever, leukocytosis, foot pain, and back pain and was admitted to the Sacred Heart Medical Center in Spokane Washington, where on April 29, 2008 she had an MRI of the lumbar spine showing

"enhancement of the nerve roots of the cauda equine likely due to mild post-operative arachnoiditis." (See **Exhibit "G"**)

20.     On July 17, 2008, K.B. had an MRI at the Kootenai Medical Center showing a "clear syrinx from C2 through the conus." A syrinx (also called syringomyelia) is a fluid filled cyst within the spinal cord. The MRI performed on July 17, 2008 demonstrated that K.B. had a syrinx which spanned the entire length of her spinal cord.

21.     In July, 2008, K.B., began treating with Dr. Richard Ellenbogen at Seattle Children's Hospital. On July 28, 2008, he advised K.B.'s parents that K.B. needed posterior fossa decompression, the traditional Chiari brain surgery, because of the syrinx. Thus, On October 7, 2008 K.B. underwent craniectomy of the posterior fossa with a C1 laminectomy for Chiari Malformation and syringomyelia.

22.     Between October 17, 2008 and June, 2009, K.B. had numerous lumbar punctures at Seattle Children's Hospital for complaints of persistent headaches.

23.     On June 23, 2009, the lumbo peritoneal shunt was tied off as she had been having headaches indicative of overshunting. Once the lumbo peritoneal shunt was tied off in June, 2009, K.B.'s headaches improved significantly. On April 12, 2010, K.B. had the lumbo peritoneal shunt removed.

24.     Since that time, K.B.'s headaches occur less frequently and with less intensity. However, she has developed new symptoms from the unnecessary tethered cord surgery, including significant lower back pain, leg pain and tingling, as well as a jelly-like sensation in the legs, urinary incontinence and leakage. As early as December, 2008, K.B. was complaining to the physicians at Seattle Children's Hospital that she was having difficulty ascending and

descending stairs with weakness in the lower extremities. She was also noted to have trouble bending her legs with more pain in the left lower extremity.

25.    K.B. has undergone varying degrees and forms of physical therapy since the tethered cord surgery. On March 17, 2009 K.B. presented to Joshua Tree PT with complaints of cervical spinal pain, upper thoracic pain, mid back pain and low back pain. K.B. has made multiple complaints of a lower back pain, and pain and tingling in her lower extremities which often feel like jelly. Most recently, she had aquatic therapy, which has been stopped for the time being, until K.B. is assessed by a rheumatologist. Joshua Tree PT records are annexed hereto as **Exhibit "H".**

26.    Since the tethered cord syndrome, K.B. sometimes leaks urine after she voids, requiring her to use feminine napkins so as to avoid leaking onto her clothes. K.B.'s urinary incontinence was caused by nerve damage from the tethered cord surgery. (See IME Reports of Dr. Daniel Adler, annexed as **Exhibit "I"**)

27.    In June, 2012, K.B. was seen by the pain management team at Seattle Children's Hospital relative to her complaints of pain. It was noted that "she is experiencing lower back pain which is located in the lumbar area as well as history of headaches which she described to be located in the temples and history of pain in her legs described as tingling pain. K.B. describes that her pain is constant and described as pins and needles and is worsened by riding in the car for long periods of time leading forward, sitting for long periods in school or standing for a long time. She reports that her back pain is generally constant as is her leg pain; however her headache is intermittent, located in the temples although occurs on an almost daily basis." The Seattle Children's Hospital records are annexed hereto as **"Exhibit J."**

28.     In April, 2012, K.B. had a sleep study which revealed that she had period limb movement index disorder which can be the result of damage to the lumbo-sacral nerves and arachnoiditis. The sleep study team recommended the use of Gabapentin, a medication used to treat nerve pain. The sleep study records are annexed hereto as "**Exhibit K.**"

29.     K.B. has been evaluated by pediatric neurologist, Dr. Dan Adler on behalf of Plaintiff's counsel. Dr. Adler evaluated K.B. in April, 2011, when your petitioners came with K.B. to New York City for their depositions. Subsequently, Dr. Adler reviewed K.B.'s updated medical records and in November 2014, conducted a telephone interview with your petitioner April Bryant, resulting in his writing a follow up report regarding K.B.'s current physical status. Dr. Adler clinical impression is that K.B.'s complaints of lower back pain, bowel and bladder dysfunction and numbness in her legs are chronic in nature and that these symptoms shall require chronic pain management and medical treatment.  Copies of Dr. Adler's reports are annexed as "**Exhibit I.**"

## PROCEDURAL HISTORY

30.     K.B.'s case against the Defendants is one of fifty-six (56) other actions filed by the Petitioner's lawyers involving similar facts and circumstances.

31.     In the Chiari litigation, the firm of Goldsmith Ctorides & Rodriguez, LLP along with the Locks Law Firm, LLP, represented forty-two (42) plaintiffs in the United States District Court, Eastern District of New York and fourteen (14) state court plaintiffs in the New York State Supreme Court.

32.     The cases in the Federal Court were consolidated for purposes of discovery before the Honorable Magistrate Judge A. Kathleen Tomlinson.

33.     Magistrate Judge Tomlinson designated, three trial cases, namely *Bryant v. Milhorat* CV-09-1751, *Vercher v. Milhorat* CV-09-1836 and *Smith v. Milhorat* CV-09-2506. Extensive general and case specific discovery was conducted in those actions.

34.     Numerous fact and expert general witnesses were deposed in the three trial cases, as it is believed that the testimony of said general witnesses would apply across the board to all of the related cases.

35.     For a more complete description of the depositions and discovery conducted in the three trial cases, Your Honor is directed to the Affirmation of Christina Ctorides, Esq. of the firm of Goldsmith Ctorides and Rodriguez, LLP.

36.     With regard to the case specific discovery conducted in this case, the parties exchanged Rule 26 Disclosures, Interrogatory Responses, and engaged in extensive document production. The depositions of your petitioners were held on April 12, 2011, April 13, 2011 and April 14, 2011 in New York.

37.     The infant Plaintiff, K.B., was evaluated on behalf of the Defendants by pediatric neurologist, Dr. Sandra L. Forem. A copy of Dr. Forem's examination report is annexed as **Exhibit "L"**.

38.     Beginning in December, 2012, the Plaintiffs and Defendants in the Chiari/Milhorat litigation agreed to mediate the cases. Extensive negotiations and discussions were held regarding the mediation process and the confidentiality that would attach to it. The case specific mediations began at JAMS before Mediator Ronnie Gallina, Esq. in April and May, 2013.

39.     On May 19, 2014, this case was mediated at JAMS before Ronnie Gallina, Esq., but did not settle at that time.

40.     In November, 2014, after extensive negotiations and after your petitioners agreed to arbitrate the case, an offer of settlement was made in the sum of ████████████ ████████████ ██████████ (████████████) ████████ by Defendant North Shore LIJ-HEALTH SYSTEMS, INC.

41.     The total amount of available insurance in this action amounts to $1 million primary insurance through Physicians' Reciprocal Insurers. There is also excess insurance available as set forth through in the Defendants' Rule 26 Disclosure dated August 25, 2010, a copy of which is annexed as **Exhibit "M"**.

42.     Your Petitioners understand that it is in the best interests of the infant Plaintiff to accept this settlement offer, as it is it substantial, and defense counsel will have competent medical experts to defend the case on both the issues of liability and causation. It is expected that at trial, the Defendants will present testimony from a pediatric neurologist who will testify under oath, that the tethered cord surgery was indicated and necessary. It is also understood that at trial, the Defendants would present testimony from a pediatric neurologist who would say that K.B.'s headaches and chronic pain are caused by her underlying congenital Chiari malformation and not the surgeries performed by the Defendants. It is further understood that the Defendants will claim that K.B.'s lower back and lower extremity pain pre-existed the tethered cord surgery.

43.     Based on the foregoing, Your Petitioners believe that it is in the best interests of the infant, K.B., to accept the offer of ██████████████████████ █████████████████ as a fair and equitable settlement against the defendant North Shore-LIJ Health System, Inc. and to discontinue the action with prejudice against all other Defendants.

44.     It is understood that the law firm of GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P. is seeking reimbursement for costs and expenses in the total sum of

████████████████████████████████████████████████████

██████████; this sum is made up of both case specific costs and costs which were incurred in the prosecution of the litigation as a whole.

    45.    The costs incurred specifically in connection with the infant, K.B.'s action amount to ██████████████████████████████████████████

████████████████████. The case specific cost sheet is annexed as **Exhibit "N"**.

    46.    The general expenses incurred in the overall litigation amount to ██████████. The general costs include the costs associated with the initial investigation of the overall litigation, the hiring of expert witnesses in the fields of neurosurgery, neuro-radiology, pathology, epidemiology and statistics, hospital administration and neurosurgical billing, the depositions of the general experts, as well as the gathering of medical literature and general data relative to tethered cord surgery. The overall costs of the litigation have been divided between the fifty-six (56) Plaintiffs. K.B. is being charged $1/56^{th}$ of the general costs. K.B.'s portion of the general costs amount to ████████████████████████████

████████████████████. The general cost sheet is annexed as **Exhibit "O"**.

    47.    After the total costs of ████████████████████████

█████████████████████████ are deducted from the settlement ████████

████████████████████████████████████ the remaining sum is

██████████████████████████████████████

████████████ It is further understood that from the sum of █████████████

████████████████████████████████████

██████████ which remains after the expenses are deducted, GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC are seeking a total fee for legal services

in the amount of ████████████████████████████████

████████████████████████, calculated pursuant to the standard New York medical

malpractice sliding scale fee agreement as authorized in the Retainer Agreement:

on the first ███████████ recovered       =$████████
on the next ███████████ recovered       =$████████
of the remaining $█████                 =$████████
**TOTAL ATTORNEY'S FEES**                $████████

It is understood that only one legal fee is being charged and that the total attorneys' fees of

████████████████████████████████████████████████████

████████████████ shall be ████████ between the firms of GOLDSMITH

CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC.

    48.    Your Petitioners request that this Court approve the costs and fees sought by

GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC

    49.    After the costs and attorneys' fees are deducted from the overall settlement award,

████████████████████████████████████████████████████

████████████████ remains.

### PAYBACK OF BLUE CROSS OF IDAHO LIEN

    50.    At the time of the Defendants' surgery, K.B. had health insurance through Blue

Cross of Idaho because her father, WAYNE BRYANT, worked for Reliable Electric.

    51.    Upon learning of the pendency of the instant lawsuit, Blue Cross of Idaho asserted

a "right of subrogation" in the amount of ████████████████████████████████

████████████████████████████, seeking reimbursement for the

medical expenses paid on the infant plaintiff's behalf. (See **Exhibit "P"**).

    52.    The Horizon Blue Cross Blue Shield Plan contains a subrogation clause and states

that it must be interpreted pursuant to the Laws of the State of Idaho. The laws in the State of

Idaho permit insurance companies to asserts subrogation claims against the proceeds paid to plaintiffs in personal injury lawsuits. (See **Exhibit "Q"**).

53.    The firm of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. negotiated with Blue Cross of Idaho, and it was agreed that Blue Cross of Idaho's "right of subrogation" would be reduced to ███████████████████████████████████████████

██████████████████████ (See Agreement Letter from Chasan & Walton, L.L.C., attorneys on behalf of Blue Cross of Idaho, dated January 9, 2015, annexed as **Exhibit "R"**).

54.    Thus, it is requested that the Court permit the payment of the Blue Cross of Idaho's "right of subrogation" in the sum of ██████████████████████████████

████████████████████████████████████████

55.    After the payment of Blue Cross of Idaho's "right of subrogation," the amount of

██████████████████████████████████████████████████████████

████████████████████ remains.

### PAYBACK OF MEDICAID LIEN

56.    K.B. also has health insurance through the K.B. Beckett Program in the State of Idaho, which is a Medicaid based program set up by the Idaho Department of Health and Welfare to cover children with disabilities.

57.    The State of Idaho has asserted a lien herein in the sum ███████████

█████████████████████████████████████████████. (See Exhibit **"S"**).

58.    On January 16, 2015, the State of Idaho issued its final demand letter with regard to the Medicaid lien, wherein it agreed to accept the sum of ████████████████████

████████████████████████████████ in full and final payment of said lien.

(See **Exhibit "T"**)

59.     Thus, it is requested that the Court permit the payment of the State of Idaho's reimbursement request in the sum ████████████████████████████

████████████████.

60.     After the payment of the State of Idaho's reimbursement request, the amount of

████████████████████████████████████ ▮

████████████████ remains.

## THE PETITIONERS HAVE ESTABLISHED THE K.B. SUPPLEMENTAL NEEDS TRUST

61.     As stated previously, Your Petitioners reside along with the infant Plaintiff in the State of Idaho, County of Kootenai, and plan to remain there to be close to family and friends. The Infant Plaintiff's paternal grandparents and other extended family reside in Idaho and in the Northwest. Other than having treatment at North Shore University Hospital and The Chiari Institute, K.B. now has little contact with the State of New York.  It is anticipated that as she grows older and requires the aid of governmental programs such as Medicaid, such benefits shall be administered by and through the State of Idaho under Idaho's law.

62.     As such, the Petitioners retained Mary W. Cusack, Esq., an attorney duly admitted to practice law in the State of Idaho, to prepare a SUPPLMENTAL NEEDS TRUST for K.B.  It is anticipated that when K.B. turns 21, or when Your Petitioners are no longer able to provide health insurance to the infant Plaintiff through their employers, that K.B. will need to become a Medicaid recipient.

63.     The cost of meeting K.B.'s needs privately could exhaust her funds in a few years.

64. Changes in the federal Medicaid Law that went into effect in 1993 as part of the Omnibus Reconciliation Action of 1993 ("OBRA 1993) specifically authorize special needs trusts as a means to preserve Medicaid Eligibility, provided that the funds remaining in the trust are available to reimburse Medicaid at the death of the Medicaid recipient. 42. U.S.C.A. §1396p(d)(4)(A).

65. As such, the Petitioners, by an through Mary W. Cusack, Esq., filed a Petition in the District Court of the Fourth Judicial District for the State of Idaho, In and For the County of Kootenai.

66. By Order dated **October 15, 2014**, the Idaho Court appointed, your petitioners, APRIL BRYANT and WAYNE BRYANT, as trustees of the K.B. Supplemental Needs Trust and as Guardians of K.B. (See **Exhibit "U"**)

67. The Idaho Court directed that any settlement proceeds owed to K.B. from the instant action be paid to the K.B. SUPPLEMENTAL NEEDS TRUST.

68. Your Petitioners, respectfully request the sum ██████ ███████ ███ ████████████████████████████████████████ be paid by the settling Defendants to the K.B. SUPPLEMENTAL NEEDS TRUST as cash benefits.

69. A copy of the SUPPLEMENTAL NEEDS TRUST document is annexed hereto as **Exhibit "V"**.

70. The Petitioners, APRIL BRYANT and WAYNE BRYANT, as trustees of the K.B. SUPPLEMENTAL NEEDS TRUST, shall invest the money pursuant Idaho Code § 68-502, which is more commonly known as the Idaho Prudent Investor Act, a copy of which is annexed as **Exhibit "W"**.

71.     Under Idaho law, as guardians of K.B. and as trustees of her supplemental needs trust, your petitioners are obligated to provide yearly accountings to the Idaho Court. The Court requires that each year, on the anniversary of our appointment, we complete both a Guardian Plan and Inventory. Once the financial reports are submitted, they will be reviewed by a Court auditor who will either give the accounting a "pass" or send the matter back to the Judge with questions that must be resolved.

72.     Your Petitioners, APRIL BRYANT and WAYNE BRYANT, shall work with Steve Nowland and Christopher Jacobs of Morgan Stanley in Spokane, Washington to develop a conservative investment strategy reasonably designed to meet K.B.'s special needs, and shall manage the TRUST in accordance with the IDAHO PRUDENT INVESTOR ACT, under the yearly supervision of the Idaho Court.

73.     It is respectfully requested that his Honorable Court issue an Order directing the settling Defendant North Shore LIJ Health Systems, Inc., and their insurance company PRI to issue a check in the sum of ███████████████████████████████████████ ███████████████████████████████████ to the K.B. SUPPLEMENTAL NEEDS TRUST and issue an Order transferring the oversight of the Special Needs Trust, including oversight of the investment and expenditure of the trust funds, to the District Court of the Fourth Judicial District for the State of Idaho, in and for the County of Kootenai.

74.     After payment to the K.B. SUPPLEMENTAL NEEDS TRUST, the amount of ███████████████████████████████████████ DOLLARS remains.

**IT IS REQUESTED THAT THE REMAINING SUM of⬛⬛⬛ BE PAID TO YOUR PETITIONERS IN SETTLEMENT OF THEIR CLAIM OF LOSS OF SERVICES AND SUPPORT**

75.     The Court should note that Your Petitioner's asserted a cause of action for loss support and services in the Complaint, a copy of which is annexed as **Exhibit "E".**

76.     Moreover, by Order of the Honorable United States District Judge Sandra Feuerstein, dated June 7, 2010, your Petitioners were permitted to amend the complaint to add a cause of action for fraud relating to financial loss incurred by your petitioners from of the Defendants' malpractice. As set forth in the Order, financial injuries to your petitioners could include expenses incurred for travel to see Defendants, lodging near the Defendants' offices, and out of pocket medical expenses.

77.     A Second Amended Complaint, asserting a fraud cause of action on behalf of your petitioners, for the financial injuries suffered from the malpractice of the defendants, was filed on the 14th day of January, 2010.  (See **Exhibit "X"**)

78.     It is respectfully requested that this Honorable Court, award the sum of ⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛⬛ (⬛⬛⬛⬛⬛⬛⬛⬛ , to the Petitioners in payment for the settlement of their causes of action, and that Honorable court issue an Order directing the settling Defendants to pay said sum directly to the Petitioners, APRIL BRYANT and WAYNE BRYANT, upon the signing of the appropriate closing documents.

79.     The Court should note that your petitioners have expended large sums of money for travel related to the infant Plaintiff's medical care. Your petitioners have traveled with the infant Plaintiff, not only to Defendant NORTH SHORE, but have also taken multiple trips to see subsequent treating physicians such as Dr. Ellenbogen at Seattle Children's Hospital. The trips to Seattle Children's Hospital continue and are expected to continue well into the future. Moreover,

your Petitioners, have expended money on K.B.'s out of pocket medical costs, not covered by insurance.

80.     It is respectfully submitted to the Court that K.B.'s chronic illness and the injuries caused by the Defendants' malpractice have taken a tremendous toll on the entire family, including the family's finances. While K.B. was an inpatient at NORTH SHORE following her surgery, your petitioners, APRIL BRYANT and WAYNE BRYANT spent weeks away from their jobs essentially providing nursing services and caring for K.B. during the post-operative period. The same holds true relative to the time periods when K.B. had to be taken to see Dr. Ellenbogen at Seattle Children's Hospital. There have been many instances when your petitioners, APRIL BRYANT and WAYNE BRYANT, have lost time from work because K.B. was hospitalized at Seattle Children's Hospital or elsewhere. While K.B. has been ill, and/or hospitalized your petitioners, APRIL BRYANT and WAYNE BRYANT have acted not only as K.B.'s parents, but essentially as her nurses.

81.     The Court should note that in the year 2008 after K.B. had her surgery by the Defendants, your petitioners, lost much time from work resulting in a loss of income that year alone of ███. The loss is documented in letters obtained from your petitioners, then employers, Reliable Electric. (See **Exhibit "Y"**)

82.     Moreover, since the time of K.B.'s tethered cord surgery, your petitioner, April Bryant has been unable to return to work, opting instead to be the primary caretaker for K.B., and to provide home schooling to K.B., who is unable to attend school and to sit at a desk for an extended period of time due to the pain in her back.

83.    Moreover, as K.B.'s future is uncertain due to her precarious medical condition, it is more likely than not, that your petitioners will not be able to rely on K.B. for help and services to aid them as they get older.

84.    The Court should note that if Your Honor approves the payment of ███ ████████████████████████████████████████ to your petitioners, it is the petitioners' intention to utilize the money to ensure that K.B. will always have a safe and comfortable home in which to live.

85.    It is for the reasons set forth above, that your petitioners respectfully request that the sum of ██████████████████████████████████████████ be awarded directly to them.

86.    No previous application for the relief requested herein has been made by the petitioners or any other person.

**WHEREFORE**, it is respectfully requested that this Honorable Court under issue an Order:

(a)    Granting approval for Your Petitioners to enter into the settlement negotiated with Defendant North Shore LIJ-Health System, Inc. in the sum of ████████████████ ██████████████████████████ and to discontinue the action against all other Defendants;

(b)    Granting Your Petitioners permission to execute the General Release and other settlement documents necessary to effect the settlement;

(c)    Approving the attorneys' fee of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P., and LOCKS LAW FIRM, PLLC in the sum of ████████████████████ ████████████████████████████████████████, which is to

be ███████████████ the firms of GOLDSMITH CTORIDES & RODRIGUEZ, LLP and LOCKS LAW FIRM, PLLC  and directing the settling Defendant and its insurance company to issue a check to GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. in the sum of ████ ███████████████████████████████ and ██████ ████████████████████ and a check to LOCKS LAW FIRM, PLLC in the sum of ████ ████████████████████████████████████████████████████████ ██████████████████

(d)    Approving the reimbursement of costs and disbursements of GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC in the sum of ████████ ██████████ ████████ ████ ████ ██ ████ ████████ DOLLARS and directing Defendant NORTH SHORE LIJ-HEALTH SYSTEM, INC. and its insurance company/companies to issue a check to GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P. and LOCKS LAW FIRM, PLLC in the sum of █████████████████████████████ ████████████████████████████

(e)    Approving the payment of Blue Cross of Idaho's reduced "Right of Subrogation" in the sum of ███████████████████████████████████████████ ██████████ ██████████ and directing the settling Defendant and its insurance company/companies to issue a check in that sum made payable to the Trust Account of Chasan & Walton.

(f)    Approving the payment of the State of Idaho's reimbursement request in the sum of ██████████████████████████████████████████████████████ and directing the settling Defendant and its insurance company/companies to issue a check in that sum made payable to HMS Recovery Unit.

(g)     Directing the settling Defendant and its insurance company/companies to pay the sum of ███████████████████████████████████████████ ██████████████████████ to the K.B. SUPPLEMENTAL NEEDS TRUST in payment of the settlement funds owed to the infant plaintiff by issuing a check made payable to the infant plaintiff's special needs trust by using the infant plaintiff's full name on the check; and

(h)     Directing the settling Defendant and its insurance company to issue a check in the sum of ████████████████████ ████████████████████████████ to APRIL BRYANT and WAYNE BRYANT in settlement of their claims;

(i)     Transferring the oversight of the K.B. SUPPLEMENTAL NEEDS TRUST to the District Court of the Fourth Judicial District for the State of Idaho, in and for the County of Kootenai; and

(j)     Directing the firm of GOLDSMITH CTORIDES AND RODRIGUEZ, LLP to serve a copy of the Infant's Compromise Order upon the District Court of the Fourth Judicial District for the State of Idaho, in and for the County of Kootenai and to provide the United States District Court, Eastern District of New York with proof of service.

(k)     Ordering that the Petition to Settle of APRIL BRYANT and WAYNE BRYANT and the accompanying exhibits, the Attorney's Affidavit of Christina Ctorides, Esq., and the instant Order granting the Petition, be sealed until such time as the remaining Chiari cases are concluded; and it is further

(l) Ordering that upon the conclusion of the remaining Chiari cases the instant Order, the Petition to Settle the Infant's Claim with accompanying exhibits and the Attorney's Affidavit shall be made public except that all references to monetary amounts, including the settlement

20

amount, the division of same, the attorneys' fees and costs, and any references to the infant's full name and date of birth shall be redacted from said documents before they are made public.

(m) Ordering that within thirty (30) days of the resolution of the remaining Chiari cases, Plaintiff's counsel shall submit redacted versions of the instant Order, the Petition to Settle the Claim with exhibits, and the Attorney's Affidavit, in the manner outlined in the preceding paragraph, which shall become public record.

Dated:        Hayden Lake, Idaho
                January 23, 2015

# VERIFICATION

STATE OF IDAHO        )
                           : ss.:
COUNTY OF KOOTENAI)

On 24ᵗʰ day of Jan, 2015, APRIL BRYANT, being duly sworn, deposes and says, that she a Petitioner in the within action, that she has read the foregoing PETITION and knows the contents thereof, that the same is true of her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.

_____
APRIL BRYANT

Sworn to before me this 24ᵗʰ day of
January, 2015

_____
Notary Public

ALYSSA L RATLEY
NOTARY PUBLIC
STATE OF IDAHO

VERIFICATION

STATE OF             )
                       : ss.:
COUNTY OF         )

On 24th day of Jan., 2015, WAYNE BRYANT, being duly sworn, deposes and says, that he a Petitioner in the within action, that he has read the foregoing PETITION and knows the contents thereof, that the same is true of his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

WAYNE BRYANT

Sworn to before me this 24th day of
January , 2015

Notary Public

23